## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| BRENT ANDREW BRACKETT ARBOGAST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-cv-10156-DJC |
| | ) |
| PFIZER; SHEEHAN, PHINNEY, BASS & | ) |
| GREEN, P.A.; JOHN BRACK; KERRI | ) |
| LEWANDOWSKI; LEIGH COWDRICK; | ) |
| MICHAEL J. LAMBERT; THOMAS M. | ) |
| CLOSSON, | ) |
| | ) |
| Defendants. | ) |

_____

### MEMORANDUM AND ORDER

CASPER, J.                                                     February 9, 2023

## I.    Introduction

Plaintiff Brent Arbogast ("Arbogast") has filed this lawsuit *pro se* against Defendants Pfizer, John Brack, Kerri Lewandowski and Leigh Cowdrick (collectively, "Wyeth Defendants"), Thomas Closson ("Closson"), Michael Lambert ("Lambert") and the law firm Sheehan, Phinney, Bass & Green, P.A. ("Sheehan P.A.") alleging various claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts I–VI), a claim under 42 U.S.C. § 1983 against Closson, Lambert and Sheehan (Count VII), fraudulent inducement against Pfizer, Brack and Cowdrick (Count VIII), fraudulent misrepresentation against Closson, Lambert and Sheehan (Count IX) and against Pfizer and Lewandowski (Count X), a claim under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, § 11I, against Pfizer, Closson, Lambert and Sheehan (Count XI) and intentional infliction of emotional distress against all Defendants (Count XII).  D. 43.  Wyeth Defendants, D. 44, Closson, D. 46, and Lambert and Sheehan P.A., D. 50, have moved to dismiss

1

for failure to state a claim upon which relief can be granted.  For the reasons stated below, the Court ALLOWS Wyeth Defendants' motion to dismiss, D. 44, ALLOWS Closson's motion to dismiss, D. 46, and ALLOWS Lambert and Sheehan P.A.'s motion to dismiss, D. 50.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).  The Court remains mindful that a *pro se* plaintiff is entitled to a liberal reading of his allegations, no matter how unartfully pled.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

## III.    Factual Background

The Court draws the following factual allegations from Arbogast's second amended complaint, D. 43, and accepts them as true for purposes of resolving the motions to dismiss.

Arbogast began working at Wyeth Pharmaceuticals ("Wyeth") in Massachusetts in March 2004.  See id. ¶¶ 1, 48, 180.  Pfizer is the successor company to Wyeth, while John Brack, Kerri Lewandowski and Leigh Cowdrick worked for Wyeth's human resources department during the relevant period.  See id. ¶¶ 5–8.  While employed at Wyeth, Arbogast complained that his position was misclassified as being exempt from the overtime compensation requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213.  See id. ¶¶ 12–14, 30–32, 35–38.  Wyeth terminated Arbogast from his position on June 30, 2004.  Id. ¶¶ 39, 61.

Following his termination, in late 2004, Arbogast sought to bring legal claims against Wyeth and asked Closson to represent him.  See id. ¶ 100.  Closson initially declined because he was not licensed to practice law in Massachusetts but later agreed to represent Arbogast and "stated that a friend was going to sponsor him so he could practice law in Massachusetts."  Id.  As alleged, Closson "persuaded [Arbogast] to assign him control of his legal claims against Wyeth" in March 2005 and "directed [Arbogast] not to communicate with anyone except him regarding the Wyeth issue and to forward him all inquiries regarding the matter."  Id. ¶ 120.

In February 2006, Closson drafted a complaint and contacted the law firm Sheehan PA to serve as local counsel in representing Arbogast in his claims against Wyeth.  Id. ¶ 90.  Attorney Lambert and Sheehan P.A. filed the complaint in this district on Arbogast's behalf despite Arbogast's allegation that he had not authorized it.  Id. ¶¶ 89, 126. That complaint alleged that Wyeth failed to pay Arbogast overtime compensation and retaliated against him by terminating his employment because he complained "about his misclassification as an exempt employee and the corresponding requirement that he continue to work overtime without receiving the additional compensation required by the Fair Labor Standards Act."  Arbogast v. Wyeth, No. 06-cv-10333-PBS, D. 1 ¶¶ 21, 28 (D. Mass. Feb. 23, 2006).  Closson provided Arbogast with a copy of the

complaint in Closson's office on or around March 21, 2006.  D. 43 ¶ 129.  Closson also presented

Arbogast with a contingent fee agreement, which Arbogast signed.  See id. ¶¶ 91, 129.

On or around June 8, 2006, Closson called Arbogast and told him that the Court required

him to present a settlement offer to Wyeth.  Id. ¶ 136; see Arbogast v. Wyeth, No. 06-cv-10333-

PBS, D. 8 (D. Mass. Apr. 19, 2006) (noticing parties of June 21, 2006 scheduling conference);

D. Mass. L.R. 16.1(c) (stating that "the plaintiff shall present written settlement proposals to all

defendants no later than 14 days before the date for the scheduling conference").[1]  Lambert filed a

statement in that action certifying that he and Arbogast had conferred about establishing a budget

for the full course of litigation and "the resolution of the litigation through the use of alternative

dispute resolution programs" and, as alleged by Arborgast, such statement "contained a forgery of

[Arbogast]'s signature."  D. 43 ¶¶ 103, 139; see Arbogast v. Wyeth, No. 06-cv-10333-PBS, D. 12

(D. Mass. June 16, 2006).  After a scheduling conference, Lambert called Arbogast "urging him

to settle his claims because both he and the judge believed they lacked merit and the judge wanted

the case settled quickly."  D. 43 ¶ 104.  Closson participated in negotiations with Wyeth, including

a "court annexed mediation" in Massachusetts that Arbogast also attended.  See id. ¶¶ 101, 146;

Arbogast v. Wyeth, No. 06-cv-10333-PBS, D. 9/22/06 entry (D. Mass. Sept. 22, 2006) (noting

"[m]ediation with principals present set for 10/11/2006"); Arbogast v. Wyeth, No. 06-cv-10333-

PBS, D. 15 (D. Mass. Oct. 17, 2006) (reporting results of mediation).

On November 2, 2006, Wyeth served Closson an offer of judgment, which Arbogast

alleges was improperly not sent to Lambert, and which Closson withheld from Arbogast.  D. 43

¶ 149.  Arbogast met with Closson in his office to discuss settlement in December 2006.  Id. ¶ 152.

---

[1] The Court may take judicial notice of court filings in the resolution of a motion to dismiss.
See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993); E.I. Du Pont de Nemours & Co. v. Cullen,
791 F.2d 5, 7 (1st Cir. 1986).

"Closson informed [Arbogast] that he was fortunate to receive a settlement for his overtime claim because it did not have much merit."  Id. ¶ 208; see id. ¶ 149 (alleging that Closson "threatened [Arbogast] that he would end up owing Wyeth money if he did not settle his claims in accordance with their settlement offer").  On January 22, 2007, Lambert filed a stipulation of dismissal that Arbogast alleges that he did not authorize and materially differed from a stipulation to which Arbogast had agreed, namely by stating that both sides paid their own legal fees, which Arbogast alleges was false.  Id. ¶¶ 18, 106, 153; see Arbogast v. Wyeth, No. 06-cv-10333-PBS, D. 16 (D. Mass. Jan. 22, 2007).  Further, "Closson deceived [Arbogast] into believing [that the stipulation of dismissal] 'with prejudice' meant prejudice against Wyeth."  D. 43 ¶ 115.

As alleged, in December 2018, Arbogast obtained several documents that he suggests were previously withheld from him, including his Wyeth personnel file, Wyeth's answer to the complaint in the prior action, Wyeth's offer of judgment, initial disclosures filed by Closson on Arbogast's behalf, and a confidential mediation statement prepared by Closson.  See, e.g., id. ¶¶ 33, 61, 112–14, 149.  Arbogast, further, alleges that Closson and Lambert previously failed to inform him that the Wage and Hour Division of the United States Department of Labor had investigated Wyeth and determined that Wyeth owed back wages to him as well as one hundred fifty similarly situated individuals.  See id. ¶¶ 27, 109, 124.  According to Arbogast, such documents and information revealed to him that Wyeth Defendants, Closson, Sheehan PA and Lambert had acted in furtherance of a conspiracy to defraud Arbogast by "unlawfully procuring control of his legal claims against Wyeth" through Closson "with the intention of preventing [Arbogast] from retaining competent legal representation" or "benefitting from cooperating with law enforcement in relation to their investigation and adjudication of Wyeth's illegal labor practices in 2005."  See id. ¶ 87.

IV.     **Procedural History**

Arbogast commenced this action on February 1, 2022, D. 1, and later filed an amended complaint, D. 22.  The Court thereafter allowed Defendants' motion for a more definite statement, D. 9, and ordered Arbogast to file a complaint in compliance with the Federal Rules of Civil Procedure.  D. 34; see D. 37.  Arbogast subsequently filed a second amended complaint ("SAC"). D. 43.  Wyeth Defendants, Closson and Lambert and Sheehan have moved to dismiss the SAC for failure to state a claim upon which relief can be granted.  D. 44; D. 46; D. 50.[2]  The Court heard the parties on the pending motions and took the matters under advisement.  D. 65.

V.      **Discussion**

A.     **Wyeth Defendants' Motion to Dismiss**

Wyeth Defendants argue that the SAC should be dismissed as to them under the doctrine of claim preclusion.  D. 45 at 5–10.  "Federal claim preclusion law applies to determine the preclusive effect to be given a prior federal court judgment" and "bars parties from relitigating claims that could have been made in an earlier suit."  Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) (noting that the doctrine bars "not just claims that were actually made"). "Claim preclusion applies if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related."  Id.  Claim preclusion "cannot be applied against a plaintiff unless the plaintiff had a full and fair opportunity to litigate all its claims in the original action."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142

---

[2] After the Court scheduled a hearing on Defendants' motions to dismiss, D. 58, Arbogast filed—without leave from the Court—a third amended complaint, D. 59.  Given Arbogast's failure to obtain leave to file a further amended complaint as required by Rule 15 of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 15(a), the Court struck the third amended complaint, D. 65, and DENIES as moot Closson, Lambert and Sheehan's motion to strike same, D. 61.

F.3d 26, 39 (1st Cir. 1998).  "[A]s long as a prior federal court judgment is procured in a manner that satisfies due process concerns, the requisite 'full and fair opportunity' existed."  Id. (calling this standard "quite permissive").

As Wyeth Defendants argue, D. 45 at 5–10, the elements of claim preclusion are satisfied here.  First, the earlier suit resulted in a "final judgment on the merits."  For claim preclusion purposes, "a voluntary dismissal with prejudice is a final judgment on the merits."  United States v. Raytheon Co., 334 F. Supp. 3d 519, 524 (D. Mass. 2018) (citing United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998)).  Such is true "even if the dismissal is made in conjunction with a settlement."  Id. (citing Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995)).  In the prior action, the case terminated upon the parties' joint stipulation of dismissal with prejudice on January 22, 2007.  Arbogast v. Wyeth, 06-cv-10333-PBS, D. 16 (D. Mass. Jan. 22, 2007).  The prior action, therefore, resulted in a "final judgment on the merits."

Second, the "causes of action" asserted in the earlier and later suits are sufficiently identical or related.  The First Circuit "uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes."  Airframe Sys., 601 F.3d at 15.  "A 'cause of action' in this context includes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'"  Id. (quoting Cunan, 156 F.3d at 114).  "This inquiry does not turn on the labels the plaintiff attaches to its various claims, but rather 'boils down to whether the causes of action arise out of a common nucleus of operative facts.'"  Id. (quoting Mass. Sch. of Law, 142 F.3d at 38).  Such depends upon factors including "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and "whether treating them as a unit 'conforms to the parties' expectations.'"  Id. (quoting In re Iannochino, 242

F.3d 36, 46 (1st Cir. 2001)).  Here, Arbogast's claims arise from the same nucleus of operative facts.  The allegations as to Wyeth Defendants are "related in time, space, origin or motivation," as both the prior and present actions arise from Arbogast's employment at and termination from Wyeth in 2004—specifically Wyeth's alleged misclassification of Arbogast under the FLSA and its retaliatory conduct toward him after he made complaints.  Compare Arbogast v. Wyeth, 06-cv-10333-PBS, D. 1 (D. Mass. Feb. 23, 2006) with D. 43; see Fagan v. Mass Mut. Life Invs.' Servs., Inc., No. 15-cv-30049-MAP, 2015 WL 3630277, at *4 (D. Mass. June 10, 2015) (concluding there was claim preclusion where the prior claims relating to plaintiff's employment with and termination from defendant arose from common nucleus of operative facts).  Thus, the "causes of action" are sufficiently identical or related.

Third, the parties in the two suits are sufficiently identical or closely related.  "Claim preclusion does not merely bar a plaintiff from suing the same defendant for the same claims in a different action; under certain circumstances, a defendant not a party to an original action may also use claim preclusion to defeat the later suit."  Airframe Sys., 601 F.3d at 17.  "[P]rivity is a sufficient but not a necessary condition for a new defendant to invoke a claim preclusion defense. . . .  [C]laim preclusion applies if the new defendant is 'closely related to a defendant from the original action—who was not named in the previous law suit,' not merely when the two defendants are in privity."  Id. (quoting Negrón-Fuentes v. UPS Supply Chain Sols., 532 F.3d 1, 10 (1st Cir. 2008)).  Here, Pfizer is successor-in-interest to Wyeth, a named defendant in the prior action.  See D. 43 ¶ 5.  Further, Brack, Lewandowski and Cowdrick are "closely related" to Wyeth as employees of the company whom Arbogast contends participated in its alleged effort to misclassify him, deprive him of overtime and retaliate against him for complaining about it.  See id. ¶¶ 6–8; Silva v. City of New Bedford, 660 F.3d 76, 80 (1st Cir. 2011) (concluding that city and

two city police officers were sufficiently "closely related" for claim preclusion purposes); Fagan, 2015 WL 3630277, at *5 (concluding same with respect to seven additional defendants employed by the defendant company named in first action); Steele v. Ricigliano, 789 F. Supp. 2d 245, 249 (D. Mass. 2011) (concluding same with respect to "directors, managers, employees or affiliates" added in second action who allegedly "act[ed] in concert with the defendants named in [first action]").  All Wyeth Defendants, therefore, are sufficiently identical or closely related to the defendants in the prior action.

Arbogast responds that he "did not have a full and fair opportunity to litigate his claims" in the prior action "in large part due to the Wyeth Defendants' fraudulent and unlawful conduct." D. 53 at 1, 15–16. Nevertheless, a plaintiff's "assertion that [he] was denied a full and fair opportunity in the prior adjudication to litigate the [issues] because of fraud is not sufficient to bar application of . . . claim preclusion." Pactiv Corp. v. Dow Chem. Co., 449 F.3d 1227, 1233–34 (Fed. Cir. 2006) (noting that, to the extent a plaintiff seeks to set aside a previous judgment based upon fraud, the plaintiff is required to challenge that judgment in a Rule 60(b) motion filed in the original proceeding).  Moreover, Arbogast does not sufficiently allege facts that he was denied due process in the prior action.  See D. 53 at 15–16; Mass. Sch. of Law, 142 F.3d at 39.

Accordingly, Counts I–IV, VIII and X and Counts VI, XI and XII as to Wyeth Defendants are dismissed under the doctrine of claim preclusion.[3]

B.    **Closson, Lambert and Sheehan's Motions to Dismiss**

1.    *Statute of Limitations*

Closson, Sheehan PA and Lambert argue that Arbogast's claims against them are time

---

[3] Given the conclusion above, the Court need not reach Wyeth Defendants' alternative arguments for dismissal.  See D. 45 at 10–14.

barred.  D. 47 at 7–9; D. 51 at 5–8.  Arbogast responds that the doctrine of fraudulent concealment

tolled his claims such that he filed this action within the applicable statutes of limitations.  D. 54

at 9–11; D. 56 at 9.

Civil RICO claims are subject to a four-year statute of limitations.  Lares Grp., II v. Tobin,

221 F.3d 41, 43–44 (1st Cir. 2000) (citing Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,

483 U.S. 143, 156 (1987)).  Under the "injury discovery accrual rule," the clock starts to run "when

a plaintiff knew or should have known of his injury."  Id. (citing Rotella v. Wood, 528 U.S. 549,

553 (2000)).  "[D]iscovery of the injury, not discovery of the other elements of a claim, is what

starts the clock."  Id. (quoting Rotella, 528 U.S. at 555).  Arbogast's remaining claims are subject

to a three-year statute of limitations and also follow the discovery rule for accrual:  such is true for

Arbogast's tort claims, see Mass. Gen. L. c. 260, § 2A; Szulik v. State St. Bank & Tr. Co., 935 F.

Supp. 2d 240, 273 (D. Mass. 2013), his claim under 42 U.S.C. § 1983, see Ouellette v. Beaupre,

977 F.3d 127, 135–36 (1st Cir. 2020); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001), and

his claims under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, § 11I, see Almeida v.

Duclos, No. 20-cv-10142-PBS, 2021 WL 3706849, at *1 (D. Mass. July 15, 2021); Sampson v.

Town of Salisbury, 441 F. Supp. 2d 271, 275–76 (D. Mass. 2006).

Under the doctrine of fraudulent concealment, however, "the statute of limitations may be

temporarily tolled during such time that the perpetrator purposefully and successfully conceals his

or her misconduct from its victim."  Álvarez-Mauras v. Banco Popular of P.R., 919 F.3d 617, 626

(1st Cir. 2019).  For a statute of limitations to be tolled under the doctrine of fraudulent

concealment, the defendant must establish "[1] wrongful concealment by defendants of their

actions; and [2] failure of the claimant to discover, within the limitations period, the operative facts

which form the basis of the cause of action; [3] despite the claimant's diligent efforts to discover

the facts." Id.  Thus, the doctrine of fraudulent concealment applies "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part." Salois v. Dime Sav. Bank of N.Y., FSB, 128 F.3d 20, 25 (1st Cir. 1997) (citations and internal quotation marks omitted); see J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996) (stating that "sufficient storm warnings" must "alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved" to "trigger their duty to investigate in a reasonably diligent manner" (citation omitted)); Gagnon v. G.D. Searle & Co., 889 F.2d 340, 343 (1st Cir. 1989) (stating that the doctrine "postpones the statute only until the plaintiff knows or should know of her injury and its probable cause").  "Silence 'can be fraudulent concealment by a person, such as a fiduciary, who has a duty to disclose.'" Demars v. Gen. Dynamics Corp., 779 F.2d 95, 98 (1st Cir. 1985) (quoting Jamesbury Corporation v. Worcester Valve Co., 443 F.2d 205, 209 (1st Cir. 1971)); see Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997) (stating that "[w]here a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment").  Still, "[a] fiduciary's lie or failure to disclose significant information is relevant only if it actually conceals an injury from the plaintiff." Hodas v. Sherburne, Powers & Needham, P.C., 938 F. Supp. 60, 64 (D. Mass. 1996) (citation omitted), aff'd, 114 F.3d 1169 (1st Cir. 1997).  "The burden rests squarely on the party pleading fraudulent concealment." Berkson v. Del Monte Corp., 743 F.2d 53, 55 (1st Cir. 1984).  Massachusetts has codified a fraudulent concealment rule substantially similar to the federal rule.  See Demoulas, 424 Mass. at 519 (citing Mass. Gen. L. c. 260, § 12).

Here, Arbogast's claims are barred unless they were tolled under the doctrine of fraudulent concealment, in which case they would not have accrued until December 2018 (i.e., when Arbogast

alleges he discovered facts previously concealed to him by Closson, Lambert and Sheehan).  As a preliminary matter, Closson, Lambert and Sheehan argue that, even assuming such tolling occurred, Arbogast's claims subject to a three-year limitations period would have expired before he filed his initial complaint in February 2022, D. 1.  The Supreme Judicial Court, however, issued an order tolling all civil statutes of limitations from March 17, 2020 through June 30, 2020 due to the COVID-19 pandemic, see Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338, 341 (2021), which would have extended the three-year statute of limitations for Arbogast's state-law claims past the date of the complaint's filing had it not expired before that time.  Such tolling order also would have applied to Arbogast's § 1983 claim.  See Silva v. City of New Bedford, No. 20-cv-11866-WGY, 2022 WL 1473727, at *3 (D. Mass. May 10, 2022) ("hold[ing] that the Supreme Judicial Court's tolling orders apply to section 1983 actions").  At any rate, whether any of Arbogast's claims expired before he filed his complaint in February 2022 depends upon whether the fraudulent concealment doctrine applies.

Closson, Lambert and Sheehan P.A. argue that Arbogast knew or should have known of his supposed claims by 2006.  D. 47 at 7–9; D. 51 at 6–8.  For support, they note that, even as alleged by Arbogast, he knew Closson and Lambert allegedly had filed the complaint in the prior action without Arbogast's authorization.  D. 47 at 7; D. 51 at 6; D. 57-1 at 5; see D. 43 ¶ 89.  They also contend that, even as alleged by Arbogast, he knew by early 2005 that Closson was not licensed to practice law in Massachusetts.  D. 57-1 at 5; D. 43 ¶ 95, 100.

Even viewing the facts in the light most favorable to Arbogast, these allegations suggest that Arbogast was or should have been on notice of any alleged fraud perpetrated by Closson, Lambert and Sheehan during the litigation of the prior action.  In addition to having knowledge of the "trigger[ing]" alleged fraud of Closson and Lambert filing the unauthorized complaint, see

J. Geils Band Emp. Ben. Plan, 76 F.3d at 1255; D. 43 ¶ 89, Arbogast participated in the mediation, Arbogast v. Wyeth, No. 06-cv-10333-PBS (D. Mass. Sept. 22, 2006); Arbogast v. Wyeth, No. 06-cv-10333-PBS, D. 15 (D. Mass. Oct. 17, 2006), allegedly knew that Closson held a negative view toward the merits of his claim, see D. 43 ¶ 208, and allegedly knew that a stipulation of dismissal terminating the prior action would be filed, see id. ¶¶ 18, 106, 153. These allegations would be sufficient to "alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved" and thus "trigger their duty to investigate in a reasonably diligent manner." See J. Geils Band Emp. Ben. Plan, 76 F.3d at 1255.

Accordingly, Arbogast fails plausibly to plead that the doctrine of fraudulent concealment tolled his claims until December 2018, so the applicable statutes of limitations expired by the time he filed the original complaint in this action in 2022, D. 1.

### 2.     *Sufficiency of the Allegations*

Even assuming *arguendo* that the applicable statutes of limitations did not expire by the time Arbogast filed his complaint, he has failed to state a claim in each of the counts brought against Closson, Lambert and Sheehan.

### a)     RICO Claims (Counts V and VI)

Closson, Lambert and Sheehan PA argue that Arbogast fails to state a RICO claim against them. D. 47 at 9–14; D. 51 at 8–11. To succeed in a civil RICO action, a plaintiff must establish "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005) (quoting Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003)). To constitute an "enterprise" under RICO, "the group must have '[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose.'" United States

v. Rodríguez-Torres, 939 F.3d 16, 24 (1st Cir. 2019) (quoting Boyle v. United States, 556 U.S. 938, 946 (2009)) (noting that "[t]he group need not have some decisionmaking framework or mechanism for controlling the members").  "'Racketeering activity' means any act that violates one of the federal laws specified in the RICO statute, including the mail and wire fraud statutes." Giuliano, 399 F.3d at 386 (internal citations omitted).  To show a "pattern," a plaintiff must allege "two acts of racketeering activity," "within ten years of each other," that are "related" and "amount to or pose a threat of continued criminal activity."  Id.  A plaintiff may show that the wrongful activity at issue satisfies the continuity requirement in two ways:  the "closed-ended" approach, which requires a plaintiff show "a series of related predicates extending over a substantial period of time" that amount to "a threat of continued criminal activity," and the "open-ended" approach, which requires a plaintiff to show "a specific threat of repetition extending indefinitely into the future" or as "part of an ongoing entity's regular way of doing business."  Id. at 387 (citation omitted).

Here, even assuming Arbogast plausibly alleges an enterprise between Closson, Lambert and Sheehan PA, see D. 43 ¶¶ 84–85, 90–91, Arbogast has not alleged any "pattern of racketeering activity" under the statute.  Factors courts consider in assessing continuity include "whether the defendants were involved in multiple schemes, as opposed to 'one scheme with a singular objective'; whether the scheme affected many people, or only a 'closed group of targeted victims'; and whether the scheme had the potential to last indefinitely, instead of having a 'finite nature.'" Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 529 (1st Cir. 2015) (quoting Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 18–19 (1st Cir. 2000)).  The First Circuit "firmly rejects RICO liability where the alleged racketeering acts . . . , taken together, . . . comprise a single effort to facilitate a single financial endeavor."  Efron, 223 F.3d at 19 (internal quotation marks and

citations omitted) (collecting cases stating that a scheme directed at a single or limited goal and few victims cannot support RICO liability). "[T]he fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" is "highly relevant" to the continuity inquiry. Id. at 18. "[W]here . . . 'a closed-ended series of predicate acts . . . constitute[s] a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities,' RICO liability cannot attach under a theory of a closed pattern of racketeering." Home Orthopedics, 781 F.3d at 530 (internal citation omitted) (quoting Efron, 223 F.3d at 19).

Thus, even accepting Arbogast's allegations against Closson, Lambert and Sheehan PA as true, the alleged enterprise's unlawful acts, taken together, comprise a single effort to facilitate a single financial endeavor against a single victim (i.e., to defraud Arbogast in his attempt to recover against Wyeth for unpaid wages and retaliatory conduct). Although Arbogast alleges conclusory statements suggesting collaboration with Wyeth Defendants, see D. 43 ¶¶ 53, 73, 79, 86, he does not allege specific facts plausibly to suggest a broader effort by Closson, Lambert and Sheehan PA to defraud other individuals. See D. 54 at 18 (speculating that "[i]t is possible that Closson's racketeering activity could be described as engaging in the operations of Brack's [e]nterprise, Wyeth, . . . or some other associate-in-fact enterprise"); Méndez Internet Mgmt. Servs., Inc. v. Banco Santander de P.R., 621 F.3d 10, 16 (1st Cir. 2010). Arbogast, therefore, fails to state a RICO claim against Closson, Lambert or Sheehan PA, so Counts V and VI are dismissed as to them.

b)      Section 1983 Claim (Count VII)

Closson, Lambert and Sheehan argue that Arbogast fails to state a claim under § 1983 because he has not alleged conduct by any person acting under color of state law. D. 47 at 15–16;

D. 51 at 11. "Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution and [federal] laws.'" Gray v. Cummings, 917 F.3d 1, 7–8 (1st Cir. 2019) (alteration in original) (quoting 42 U.S.C. § 1983). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

The Supreme Court has also "made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, 'that conduct [is] also action under color of state law and will support a suit under § 1983.'" West, 487 U.S. at 49 (alteration in original) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982)); Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543 (1st Cir. 2021) (stating that "Section 1983's 'under color of state law' requirement has long been regarded as functionally equivalent to the 'state action' requirement of the Fourteenth Amendment").

However, "[i]t is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law." Grant v. Hubert, No. 09-cv-1051 (JBW), 2009 WL 764559, at *1 (E.D.N.Y. Mar. 20, 2009) (citing Polk County v. Dodson, 454 U.S. 312, 319 (1981)). Thus, although it is unclear on what basis Arbogast claims Closson, Lambert and Sheehan PA acted under color of state law, to the extent Arbogast argues that they acted under color of state law by virtue of their being governed by state rules of professional conduct or by virtue of their state-issued licenses to practice law, see D. 43 ¶¶ 162–68, such argument fails. See Grant, 2009 WL 764559, at *1. Accordingly, Arbogast fails to state a claim under § 1983 against Closson, Lambert or Sheehan PA at least on this basis, so Count VII

is dismissed.

c)      Fraudulent Misrepresentation (Count IX)

Closson, Lambert and Sheehan PA argue that Arbogast fails to allege any statement that could be construed as a false representation of material fact.  D. 47 at 17–18; D. 51 at 12.  A plaintiff alleging fraudulent misrepresentation "must show the defendant (1) made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act on this representation, (4) which the plaintiff justifiably relied on as being true, to her detriment."  Sullivan v. Five Acres Realty Tr., 487 Mass. 64, 73 (2020) (quoting Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass. App. Ct. 282, 288 (2012)).  However, "[d]eception need not be direct to come within reach of the law.

A plaintiff alleging fraud and deceit must plead facts "with particularity" under Mass. R. Civ. P. 9(b).  See Equip. & Sys. For Indus., Inc. v. Northmeadows Const. Co., 59 Mass. App. Ct. 931, 931–32 (2003) (noting that Rule 9(b) "heightens the pleading requirements placed on plaintiffs who allege fraud and deceit").  "At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place."  Id. at 931–32.  The plaintiff also must "specify the materiality of the misrepresentation, its reliance thereon, and resulting harm."  Id. at 932.

Here, Arbogast alleges that Closson, Lambert and Sheehan PA knowingly misrepresented the nature of their representation of him, including that Lambert would provide Arbogast with legal representation not limited in scope, and "withheld a myriad of records from [Arbogast] that Wyeth provided [Closson] with the intention of helping Wyeth to continue to fraudulently conceal them from [Arbogast] and prevent their use in official proceedings," such as:  Wyeth's answer to

17

the complaint, Wyeth's offer of judgment, initial disclosures sent by Closson to Wyeth, and a confidential mediation statement prepared by Closson.  D. 43 ¶¶ 110–14.  Arbogast, further, alleges that "Closson and Lambert failed to inform [him] that the [United States Department of Labor, Wage and Hour Division,] conducted an investigation into Wyeth and determined he along with over 150 similarly situated employees were owed back wages."  Id. ¶ 109.

Even accepting these allegations as true, Arbogast has failed to satisfy his burden to plead this claim sounding in fraud "with particularity."  See Equip. & Sys. For Indus., 59 Mass. App. Ct. at 931.  Indeed, Arbogast has not specified the contents of each alleged misrepresentation, where and when it took place, how the alleged misrepresentation was material and how he relied upon such alleged misrepresentation to his detriment.  See id. at 932.  Arbogast, therefore, has not met the "heighten[ed] . . . pleading requirements placed on plaintiffs who allege fraud and deceit."  See id.  Accordingly, the Court dismisses Arbogast's fraudulent misrepresentation claim as to Closson, Lambert and Sheehan PA, Count IX.

d)   Massachusetts Civil Rights Act Claim (Count XI)

Closson, Lambert and Sheehan PA argue that Arbogast's allegations do not plausibly state a claim under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. c. 12, § 11I.  D. 47 at 18; D. 51 at 12.  "Under the MCRA, . . . the [plaintiff] must show that 'his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth' was either 'interfered with, or attempted to be interfered with' through 'threats, intimidation or coercion.'"  Finamore v. Miglionico, 15 F.4th 52, 58–59 (1st Cir. 2021) (quoting Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (quoting Mass. Gen. L. c. 12, § 11H)).  Unlike § 1983, the MCRA does not require state action, Barbosa v. Conlon, 962 F. Supp. 2d 316, 332 (D. Mass. 2013), but does require "threats, intimidation or coercion," see Finamore, 15 F.4th at

18

58–59.  The Supreme Judicial Court has defined "threat" in this context as "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm," "[i]ntimidation" as "putting one 'in fear for the purpose of compelling or deterring conduct,'" and "[c]oercion" as "the application to another of force 'to constrain him to do against his will something he would not otherwise have done.'" Kennie v. Nat. Res. Dep't of Dennis, 451 Mass. 754, 763 (2008) (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994)).

Coercion "may rely on physical, moral, or economic coercion." Id. (collecting cases). Still, "the exception for claims based on non-physical coercion remains a narrow one." Thomas v. Harrington, 909 F.3d 483, 492–93 (1st Cir. 2018) (quoting Nolan v. CN8, 656 F.3d 71, 77–78 (1st Cir. 2011)) (stating that "[i]t is rare for a MCRA claim to involve no physical threat of harm"). This exception, therefore, "should not be invoked unless the record 'resembl[es] the sort of physical, moral, or economic pressure that courts have found sufficient to support a claim under this statute.'" Id. at 493 (alteration in original) (quoting Meuser v. Fed. Express Corp., 564 F.3d 507, 519 (1st Cir. 2009)).  "Massachusetts courts have required 'a pattern of harassment and intimidation' to support a finding of non-physical coercion under the MCRA." Id. (quoting Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 594 (2001)).

Because none of Closson or Lambert's alleged conduct appears to constitute "threats" or "intimidation," the Court only considers whether Arbogast sufficiently alleges "coercion" under the MCRA.  Here, Arbogast alleges that his choices in litigating the prior action, such as agreeing to settle the case, were influenced by Closson and Lambert's fraudulent conduct.  See, e.g., D. 43 ¶ 106.   Even if true, however, the SAC does not contain allegations indicating "a pattern of harassment and intimidation" to support a finding of non-physical coercion under the MCRA.  See Thomas, 909 F.3d at 493.  Accordingly, the Court dismisses Arbogast's claim under the MCRA,

Count XI.

> e)     Intentional Infliction of Emotional Distress (Count XII)

A plaintiff alleging a claim of intentional infliction of emotional distress must establish (1) that the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of the conduct, (2) that the conduct was "extreme and outrageous," (3) that the defendant's actions caused the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976). "The standard for making a claim of intentional infliction of emotional distress is very high." Polay v. McMahon, 468 Mass. 379, 385 (2014) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" Id. at 386 (alterations in original) (quoting Roman v. Trs. of Tufts Coll., 461 Mass. 707, 718 (2012)). "Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.'" Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (quoting Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (stating that "nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort") (citation and internal quotation marks omitted)).

Even just considering the second element, Arbogast fails to show that Closson, Lambert or Sheehan PA's actions rise to the level of extreme or outrageous conduct. Arbogast alleges that Closson, Lambert and Sheehan conspired to conceal the Wage and Hour Division investigation from him and to file the unauthorized complaint in the prior action. D. 43 ¶ 207. Arbogast further

alleges that "Closson informed [him] that he was fortunate to receive a settlement for his overtime claim because it did not have much merit" and "told [him] that Wyeth had a right to terminate him because he acted like a belligerent jerk and disrupted Wyeth's workplace for no good reason." Id. ¶ 208.  Even if true, however, such conduct does not go "beyond all possible bounds of decency" and cannot be "regarded as [so] atrocious, and utterly intolerable in a civilized community" as to support an IIED claim.  See Polay, 468 Mass. at 386 (quoting Roman, 461 Mass. at 718). Arbogast's conclusory argument to the contrary, see D. 54 at 19, does not compel a different result. Accordingly, the Court dismisses Arbogast's claim for intentional infliction of emotional distress, Count XII.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS the Wyeth Defendants' motion to dismiss, D. 44, ALLOWS Closson's motion to dismiss, D. 46, and ALLOWS Lambert and Sheehan PA's motion to dismiss, D. 50.[4]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[4]Following the hearing on Defendants' motions to dismiss, Arbogast filed a motion for leave to amend the second amended complaint.  D. 66.  Having considered the proposed amended pleading, D. 66-2, and the opposition to same, D. 73, 75, and Arbogast's reply briefs, D. 77, 79, the Court denies the motion to amend.  See D. 75 at 4-5; Gonzalez–Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001).